7284

## NEW YORK LIFE INS. CO. v. BRADLEY, TREASURER.

1. CORPORATIONS.—POWER OF STATE to create and dissolve corporations, and right of State to prohibit or permit foreign corporations to do business within the State, stated.

2. FOREIGN CORPORATIONS—TAX—CONSTITUTIONAL LAW.—Sections 302, 1808 and 1809, of Code of 1902, in so far as they require of foreign insurance companies doing business in this State a quarterly statement of their gross receipts and provide that the county auditor of each county in which they do business shall levy the regular taxes on the first of each year on the gross receipts for the past year, provide for a property tax on property not within the tax district when levied and are unconstitutional in that it is a taking of property without due process of law. But section 1809 provides for an assessment.

3. REPEAL OF STATUTES.—Section 302 of Code, 1902, is repealed by section 1809 of same Code in so far as the latter is inconsistent with the former, the latter being a part of a later statute.

Before MEMMINGER, J., Abbeville, December, 1908. Affirmed.

Action by New York Life Insurance Company against W. T. Bradley, as treasurer of Abbeville county. From judgment for plaintiff, defendant appeals.

*Attorney General J. Fraser Lyon,* for appellant, cites: *State may collect tax by suit:* Acts, 1905, 829; 1 Cool. on Tax, 17; Code, 1902, 263, 430; 19 Wall., 229. *State may impose condition for privilege of entering:* 8 Wall., 168; 95 Am. Dec., 538; 143 U. S., 305; 77 S. C., 453. *Condition may be either express or implied:* 106 U. S., 356; 174 N. Y., 475; 1 Black., 61; 95 U. S., 336; 21 Ency., 792; 26 Ency., 613. *Is not property but privilege tax:* 56 Am. St. R., 367; 95 Mo., 366; 93 U. S., 122; 123 Mass., 495. *Tax on premiums valid:* 1 Desty on Tax, 229; 85 Pa. St., 513. *Power to tax and limit thereof is in discretion of Legislature:* Burrows on Tax, 150; 78 S. C., 222. *Presumption in favor of*

*constitutionality of statute:* 21 Ency., 790; 28 S. C., 222; 48 S. C., 52. *License to do business in State for a year:* 77 S. C., 453. *Foreign corporation comes into State subject to laws then of force and accepts them as a condition:* 143 U. S., 305; 13 Ency., 842; 24 S. C., 73; 27 S. C., 392; 100 Mass., 538; 183 U. S., 247; 194 Mo., 124; 33 S. W., 993.

*Messrs. Wm. P. Greene* and *James H. McIntosh*, contra, cite: *Nature and origin of the tax:* 17 Stat., 983; Code, 1902, 262, 268, 269, 302; chap. 9, title 3 of part I; chap. 14 of title 3 of Rev. Stat. of 1893, article 6; Rev. Stat., 1893, 246; act of March 5, 1907; Code, 1902, 1808, 1809. *This is not a franchise tax:* 6 Wall., 611; 165 U. S., 578; 106 Tenn., 282; 24 Stat., 71; acts, 1899, 59; 31 Ky., L. R., 1319. *The tax of one-half of one per cent. on gross premiums is a franchise tax:* 4 S. C., 376; 16 S. C., 32; 141 Mo., 619; 20 Fed., 411; 174 N. Y., 475; 61 N. J. L., 461; 134 U. S., 594; 89 N. C., 301; 46 N. J. Eq., 270. *Tax is void because levied without an assessment:* 62 S. C., 28; 100 U. S., 539; 54 S. C., 564; Con. art. I, sec. 6; art. III, sec. 29; art X, sects. 1, 13; 53 S. C., 277; 54 S. C., 564; 56 S. C., 516; 62 S. C., 28. *And because not imposed according to a uniform and equal rate of assessment:* 41 Cal., 351; 57 Tex., 635; 56 S. C., 516. *And because imposed on property which respondent never owned within the county:* 4 Wheat., 316; 206 U. S., 392; 11 Wall., 423; 15 Wall., 300; 19 Wall., 490; 165 U. S., 194; 188 U. S., 513; 196 U. S., 466; 199 U. S., 194; 205 U. S., 395; 91 Me., 605; 94 Tenn., 295; 126 Mich., 22. *Paying this tax in former years does not now estop respondent from recovering it for this year:* 121 U. S., 135; 196 U. S., 720; 18 Wall., 271; 95 U. S., 335; Herman on Est., 1070; Bacon on Ben. Soc. and Life Ins., 420; 43 Vt., 307; 26 Vt., 373; 5 Denio, 155; Bigelow on Est., 26; 43 N. Y., 107; 11 Conn., 257; 140 Mich., 593; 58 Neb., 245; 23 R. I., 118; 93 Ia., 119; 60 N. H., 500; 26 Ky. L. R., 430; 49 S. C., 188.

August 28, 1909.   The opinion of the Court was delivered by

MR. JUSTICE WOODS.   The New York Life Insurance Company paid under protest to the treasurer of Abbeville county the sum of one hundred and seventy-one dollars and thirty-five cents, the amount of taxes and penalties entered against the company on the treasurer's books, in accordance with the statute law of the State.   The insurance company then brought this action for the recovery of the money so paid, under section 413 of the Civil Code, which permits suit against a county treasurer to recover taxes paid under protest, because conceived to be unjust or illegal.

The allegation of the complaint is, that eight thousand five hundred and fifty-five dollars, the total of the gross premiums collected in the County of Abbeville from 16th January, 1906, to 1st January, 1907, was entered on the tax books as taxable property of the company in the county, under sections 302 and 1809 of the Civil Code; and that the amount of the tax was ascertained by computing on this gross sum as property, the per cent. levied on all taxable property in the county for the State, county and school purposes.

The plaintiff being a foreign corporation bases its action on the theory that the tax is a property tax, as distinguished from a payment required of it by statute for the privilege of doing business in the State; and on that theory thus sets out the grounds on which it alleges the tax to be illegal:

"(a) Said plaintiff did not at the time of said levy, or at any time prior thereto, have any property of any kind within said County of Abbeville.

"(b) At the time of said pretended levy said plaintiff did not then, nor did it theretofore, have, nor has it since had within said county, or within the jurisdiction of the authority imposing said tax, or within the jurisdiction or control thereof, or subject to the taxing power of said county, any property of the kind or class which was the sub-

ject of said taxation, and upon or on account of which said tax was levied, or any other property.

"(c) The levy and colllection of said alleged tax is in contravention of the Constitution of the United States, and particularly of the Fourteenth Amendment to said Constitution, in that it deprives said plaintiff of its property without due process of law, and denies to said plaintiff the equal protection of the law.

"(d) That that part of section 1809 of the Civil Code of South Carolina, pursuant to which said pretended tax was levied, as follows, to wit: 'The Comptroller General shall, immediately after the close of the year, transmit to the county auditor in each of the various counties from which such company has derived its gross premiums or gross receipts, a statement of the amount of premiums or receipts collected in such county during the preceding year, which said statement of the gross receipts heretofore required of the agency of such company in such county, shall be placed on the duplicate in said county, together with the other items included in the taxable property of such company,' is unconstitutional as herein stated, and said tax imposed as pursuant thereto is void, because said law provides for imposing a tax without any valuation or assessment, and said tax thereunder is not a tax upon property within the jurisdiction of the body imposing the same, but is a tax upon premiums and receipts for the preceding year, whether the property so taxed then, or on the preceding 1st day of January, or at any time since said first day of January, was within said county or not, and is not a tax upon property according to a uniform and equal rate of valuation or assessment, but is a tax imposed arbitrarily, without regard to valuation, assessment, uniformity, equality or the place where the property is actually located, contrary to sections 1, 5 and 13, of article X, of the Constitution of the State of South Carolina."

Under specification (e), section 302 of the Civil Code is alleged to be unconstitutional on the same ground.

"(f) Even if said gross premiums or gross receipts were within the jurisdiction of the body pretending to impose said tax, nevertheless said tax imposed thereon, is unconstitutional and void, and especially is contrary to sections 1 and 5 of article X of the Constitution of South Carolina, in that it is unequal and unjust and double taxation and is not uniform in respect to persons and property within the jurisdiction of the body imposing the same, for that said gross premiums and gross receipts were, and said law required them to be, valued at the face amount thereof, and said tax was imposed upon said face valuation, whereas all other property within the jurisdiction of the body imposing the said tax was valued and assessed for taxation in said year on only a fraction of its full value in money, on, to wit, sixty-six and two-thirds per cent. of its full value in money."

The Attorney General, on behalf of the treasurer of Abbeville county, demurred to the complaint on the ground: "that the complaint fails to state facts sufficient to constitute a cause of acion, in that it appears upon the face of the complaint that the tax in question is imposed under the terms of chapter , section 1809, of the Code of Laws, 1902, vol. 1, as a condition of the plaintiff, a foreign insurance company doing business in this State."

The cause was heard on the complaint and demurrer, and Judge Memminger made a decree overruling the demurrer and rendering judgment in favor of the plaintiff for the amount claimed.

If the amount paid by the plaintiff to the treasurer of Abbeville county is an exaction prescribed by the statute law of the State, as the price or condition of allowing the plaintiff as a foreign corporation to do business in the State, [1] then all the constitutional objections urged against it would be unavailing. A corporation is an artificial entity owing its existence entirely to the action of the State. Individuals have no right to demand of the State the creation of a corporation; and the State may create one corporation

and refuse to create another of the same kind. The power of the State as a sovereign to grant charters and modify or repeal them—to create and destroy corporations—is limited only by the provision of the Constitution of the United States that it shall not pass any law impairing the obligation of contracts. In the highest expression of its sovereign will, the State has imposed constitutional limitations on the power of the General Assembly to grant charters, but subject to these limitations and the veto power of the Governor, the General Assembly represents the sovereign power of the State and may at its will create and destroy corporations.

It follows from this principle that no State can create a corporation and empower it to do business as a corporation in a sister State. The only limitation on this power is thus expressed by Justice White in *Hooper* v. *California,* 155 U. S., 648, 653, 39 L. Ed., 297: "Whilst there are exceptions to this rule, they embrace only cases where a corporation created by one State rests its right to enter another and to engage in business therein upon the Federal nature of its business. As, for instance, where it has derived its being from an act of Congress, and has become a lawful agency for the performance of governmental or *quasi* governmental functions, or where it is necessarily an instrumentality of interstate commerce, or its business constitutes such commerce, and, is, therefore, solely within the paramount authority of Congress. In these cases the exceptional business is protected against interference by State authority." Subject to this exception the States may refuse to allow a foreign corporation to enter, or they may impose such conditions of entering as they may see fit; and it is not a matter for judicial inquiry whether the reasons for the refusal or for the conditions and burdens imposed were good or bad. The power of the State to exclude foreign corporations includes the power to admit them for any period of time and to provide as a condition of admission that the privilege of doing business in the State shall be forfeited by any pre-

scribed action or non-action of the corporation. *Paul* v. *Virginia,* 75 U. S., 168, 19 L. Ed., 357; *British Am. Mort. Co.* v. *Jones,* 77 S. C., 443, 58 S. E., 417; *Hooper* v. *California, supra; Waters, Pierce Oil Co.* v. *Texas,* 177 U. S., 28, 44 L. Ed., 657; *Security M. Ins. Co.* v. *Prewitt,* 202 U. S., 246, 50 L. Ed., 1015; *Swing* v. *Weston L. Co.,* 205 U. S., 275, 51 L. Ed., 799.

The first question then, is, whether the statute law of the State required that the payment by the plaintiff of the sum sued for should be a condition of entering the State, or that after entering the plaintiff should forfeit the privilege of doing business in the State if it failed to make the payment. If the exaction is of this character, then there is no foundation for the suit. If, on the other hand, it is imposed by the statutes of the State as an ordinary property tax, it will be necessary to consider the objections urged that, as a property tax, it is forbidden by the Constitution of the State and of the United States.

The tax was first laid by section 177 of the act of 1882, entitled "An Act to provide for the taxation and assessment of property." Not only the title, but the entire body of the act relates exclusively to the taxation of property. This section 177, with an immaterial change as to the time of making the returns, was incorporated in the Civil Code as section 302 of article VI, title III, the heading of the title being "Of the assessment and collection of taxes," and of the article, "Special rules as to returns and assessments of railroad, express, telegraph and insurance companies, and provisions as to other corporations." Here, also, the body of the article and the title show plainly that the design of the General Assembly was to provide a scheme for the assessment and collection of poll taxes and taxes on property. As expressed in section 302, the enactment reads: "Each agent in this State of any insurance company organized under the laws of any other State or country, and doing business in this State, shall, annually, in the month of January, or before

twentieth of February, return to the auditor of the county in which such agency is located, a sworn statement of the gross receipts of such agency for the year ending on the first day of that month, including all notes, accounts and other things received or agreed upon as a compensation for insurance at such agency, together with all the value of any personal property of said company situate at such agency; and the company shall be charged with taxes at the place of said agency on the amount so returned; and the agent shall also be personally responsible for such taxes, and may retain in his hands a sufficient amount of the company's assets to pay the same, unless the same shall be paid by the company."

If nothing else appeared, it seems too obvious for discussion that the tax provided by this section was intended not as a privilege tax, but as a tax on the property of foreign insurance companies, the gross income collected in the State being deemed by the General Assembly property within the State.   But in 1897, another act was passed under the title "An act to require an additional graduated license fee from certain companies doing business in this State."   22 Stat., 527.   This legislation is now sections 1808 and 1809 of the Civil Code.   As the cause depends on the precise words of these sections, it is necessary to set them out in full.

Sec. 1808. "In addition to the annual license fee of one hundred dollars now provided by law, every foreign insurance company of any class—fire, life, marine, surety, security, guaranty, hail storm, live stock, accident, plate glass, and other like insurance companies, and all other like classes of like business not incorporated under the laws of the State of South Carolina, except benevolent institutions operating under the Grand Lodge system, shall be required to pay quarterly to the State Treasurer, as an additional and graduated license fee for a license, to be delivered by him to such company or corporation, an amount equal to one-half of one per centum on the gross premiums, gross income or gross receipts, as the case may be with such company, as

collected during the three months immediately preceding the payment of such license fee."

Sec. 1809. "Each of such companies as are mentioned in section 1808, doing business in this State, shall make a quarterly return to the Comptroller General, in such form as the Comptroller General may prescribe, of its gross income or gross receipts, as the case may be, for the preceding quarter, which said return shall state in detail amount of gross premiums, gross receipts or gross income collected by such company in each of the various counties in this State. The Comptroller General shall prepare an abstract of such quarterly returns, which shall be by him transmitted to the State Treasurer, who shall collect the said additional license fee of one-half of one per centum on the amount therein stated. The returns herein required shall be made on the 31st day of March, 30th day of June, 30th day of September and the 31st day of December in such year. *The Comptroller General shall immediately after the close of the year, transmit to the county auditor in each of the various counties from which such company has derived its gross premiums or gross receipts, a statement of the amount of premiums or receipts collected in such county during the preceding year, which said statement of the gross receipts heretofore required of the agency of such company in such county shall be placed on the duplicate in such county, together with the other items now included in the taxable property of such company.*

"Any company which shall wilfully fail or refuse to make the quarterly returns herein provided for, or shall make any false statement in reference to or in connection with such returns, or which shall refuse or fail to pay the quarterly license fee herein provided for, shall, in addition to the penalty now provided by law for such offense, forfeit its right to do business in this State, and pay an additional penalty of fifty per cent. of their actual gross receipts, premiums or income, as ascertained, and the State Treasurer is authorized

to proceed to collect such fines or forfeiture in the manner provided by law."

In so far as the portion of section 1809, which we have italicized, is inconsistent with section 302, above quoted, section 302 must be held to be repealed. It is true, both sections were re-enacted at the same time in the Civil Code approved as one statute on 6th February, 1902; but when two sections of a Code are repugnant, the section transcribed from the later statute must be deemed to repeal or modify that transcribed from an earlier statute. Endlich on Statutes, sec. 183, 26 Am. & Eng. Enc., 734. This rule results from the fact that the main purpose of codification such as ours is to embody in one act, not new legislation, but the latest legislation. Both sections must be given effect as far as possible. Viewing the two sections in this way, it seems clear that the statement of the amount of the gross receipts, furnished to the county auditor by the Comptroller General, was intended to take the place of the statement of such receipts required of the local insurance agent by section 302. The law requires that the statement furnished by the Comptroller General shall embrace only premiums or receipts collected," not "notes, accounts and other things received or agreed upon as a compensation for insurance," required in the return of the agent provided for in section 302. The two sections provide entirely different schemes of getting the preminms on the tax books and a different method of ascertaining what amount ought to be placed there. Section 302, then, must be regarded repealed and the italicized portion of section 1809 substituted for it, except, possibly, the provision with which we are not now concerned, with respect to the personal liability of the local agent.

But the subtituted enactment contained in section 1809, not less than section 302, provides for a property tax on gross receipts of the insurance company. No other conclu-

sion is possible, except by distortion of the language of the statute. The sum of such receipts reported by the Comptroller General is to be placed on the tax duplicate "together with other items now included in the taxable property of such company." This clearly means that the sum of the gross premiums is to be treated and entered as an item of property for the purposes of taxation, along with other items of property such as office buildings, furniture and land. Thus the tax is in fact designated in the statute as a property tax. Distinguished from this as a property tax, two privilege or license taxes are in the same act provided for and called license fees, namely, one hundred dollars, and an additional and graduated license fee of an amount equal to one-half of one per cent. on the gross premiums, gross income or gross receipts. What is still more convincing is, that the plan of the legislation is to make any failure to pay a privilege tax result in forfeiture of the right to do business in the State; and accordingly, it is provided that the failure to make returns of gross income to the Comptroller General, or the making of a false return, or the failure to pay the sum designated as license fees, shall result in forfeiture of the right to do business in the State. The omission of such a penalty for non-payment of the tax to the county treasurer is so conspicuous as to indicate a careful design to place the exactions named as license fees in an entirely different class. If this had been intended as one of three exactions for the privilege of doing business in the State, the General Assembly would not have made the failure to meet either of two of them result in forfeiture, and carefully avoided providing that result for failure to comply with the third. No doubt the condition upon which a foreign corporation may enter a State may be implied from the terms of the statute, but here, as we have endeavored to show, the language of the statute is too plain for implication. It is also significant that section 1809 not only indicates in positive language that the sum of the gross premiums shall

be placed on the tax duplicate as property, but it provides no penalty for the failure to pay the tax levied thereon. The obvious reason is, that it was intended the tax should be collected as a property tax, and payment enforced by the remedies already provided by a different statute for that purpose.

Thus far we have considered the meaning of sections 1808 and 1809 only. It remains to weigh the argument that section 1821 provides that failure to pay the tax under consideration shall work a forfeiture of the right of a foreign life insurance company to do business in this State. The section reads as follows: "The Comptroller General, or other official to whom said companies, associations or partnerships are annually required to report to this State, shall forthwith revoke and recall the license or authority of such company or companies, association or associations, partnership or partnerships to do or to transact business in this State, for any violation of this chapter, and no renewal or authority shall be granted to it for three years after such official revocation; notice of such revocation to be duly published for one consecutive week in three or more daily papers published in this State; and for a violation of any of the provisions of this chapter by any such company or companies, association or associations, partnership or partnerships, they shall, on conviction thereof, pay a fine of not less than five hundred dollars." This section is in the same chapter with section 1809, and, therefore, if a failure of the plaintiff to pay the sum charged on the books of the auditor of Abbeville county as taxes on its receipts would be a violation of a duty imposed by that section, such failure would operate to forfeit the plaintiff's right of doing business in the State. If that is the meaning of section 1821, it would make no difference what the exaction was called or how it was ascertained. If the statute requires that it shall be paid as a condition of a foreign corporation doing business in the State, then the plaintiff has no ground to attack it, but must meet the condi-

tion or leave the State. The inquiry, then, is, What is the plaintiff, as a foreign insurance company required by sections 1808 and 1809 to do? The answer is, These three things and no other: (1) to pay a license fee of one hundred dollars; (2) to make a quarterly return of its gross premiums; (3) to pay quarterly an additional graduated license fee to the State Treasurer of one-half of one per cent. on its gross premiums. The mere placing of the gross amount of premiums collected in the county by the auditor on the tax duplicate places on the plaintiff no obligation. And section 1909 provides for nothing more. Certainly, the duty is imposed on the plaintiff, as on all others, to pay its taxes, but it is imposed not by this section or chapter, but by section 263 of title III, which provides, "All taxes, assessments and penalties legally assessed shall be considered and held as a debt payable to the State by a party against whom the same shall be charged." It would be straining the meaning of words, in order to find a forfeiture, to hold that the failure to pay this tax would be a violation of the provisions of section 1809.

Having reached the conclusion that the tax under discussion is not a privilege tax, the non-payment of which would work a forfeiture of the right of the plaintiff to do business in the State, but a property tax, the last question is, whether it was levied in violation of the Constitution.

We are unable to assent to the proposition that there was no assessment as required by the Constitution. The short and approved definition of "assessment" is "determining the value of a man's property or occupation for the purpose of levying a tax. Determining the share of a tax to be paid by each individual. Levying a tax." Bouvier's L. Dictionary; *People* v. *Weaver,* 100 U. S., 539, 25 L. Ed., 705; *State* v. *R. R. Co.,* 54 S. C., 564, 32 S. E., 691; *So. Ry. Co.* v. *Kay.,* 62 S. C., 28, 39 S. E., 785.

As we have seen, the property to be assessed was money—the actual receipts. Sections 1808 and 1809 provide a

method of officially ascertaining the amount of the gross income; and that income being money, the amount when expressed in dollars and cents determines the value. In connection with this official determination of value for the purposes of taxation, the general tax laws fix the per cent. to be levied on the amount so determined along with the entire taxable property of the State. Under the definition above referred to, it seems clear that this was an assessment.

The complaint further alleges the invalidity of the tax because it "is not a tax upon property within the jurisdiction of the body imposing the same, but is a tax upon premiums and receipts for the preceding year, whether the property so taxed then, or on the preceding 1st day of January, or at any time since said first day of January, was within said county or not."

By the method of assessment required in the statute that which is taxed is not limited to the money in the State owned by the foreign insurance company on the 1st day of January of each year, the date on which the property is to be entered. On the contrary, the requirements is, that all the money received for premiums in the State during the whole of the preceding year shall be taxed as if it were property in the State on the date of the assessment. The power of the State to tax property is limited to property within its own borders. Manifestly, it can not tax as property within the State, on the first day of January, money which had passed out of the State during the preceding year. On this ground, the tax must be held unconstitutional, as the taking of property without due process of law. *Louisville and J. Terry Co.* v. *Kentucky,* 188 U. S., 385, 47 L. Ed., 513; *Delaware &c. R. R. Co.* v. *Pennsylvania,* 198 U. S., 341, 49 L. Ed., 1077; *Union R. & T. Co.* v. *Kentucky,* 199 U. S., 194, 50 L. Ed., 150.

Having reached this conclusion, it is unnecessary to consider the ground of objection that the money received by the

plaintiff was taxed at its full value, while other property was assessed at only two-thirds its value.

The judgment of the Circuit Court is affirmed.