8358

H. L. & L. F. McSWAIN v. ADAMS GRAIN AND PROVISION CO.

1. Principal and Agent.—In a motion to vacate service of a summons on an agent the Court has no power to review the findings of the Circuit Court unless it is wholly unsupported by evidence.

2. Ibid.—Foreign Corporations—Service of Summons—Jurisdiction.— An agent of a foreign corporation doing business in this State upon whom process can be served should be of such representative charac-

ter as that the Court could infer from the circumstances that he had authority implied by the law to accept service of process. A broker selling corn for a nonresident corporation on commissions paid by the corporation is such an agent as that service on him would give the Courts of the State jurisdiction of the corporation.

3. FOREIGN CORPORATIONS—SERVICE OF SUMMONS—JURISDICTION.—Where a nonresident corporation enters and does business in a State, it impliedly assents to the terms imposed by the State on foreign corporations doing business therein, and where the State provides that jurisdiction of such nonresident corporation may be acquired by service on an agent in the State, the corporation cannot deny the jurisdiction of the Court thus acquired.

Before DeVore, J., Laurens, May, 1911. Affirmed.

Action by H. L. and L. F. McSwain against Adams Grain and Provision Company. Defendant appeals.

*Messrs. Ferguson, Featherstone & Knight,* for appellant, cite: *As to service on agent:* 61 S. C. 361; 172 U. S. 602; 85 Am. R. 933. *What is a broker?* 4 Ency. 961; 61 S. C. 361; 73 S. C. 530. *Evidence of agency:* 58 S. C. 201; 59 N. J. Eq. 8; 51 S. W. 1095.

*Messrs. F. P. McGowan* and *J. J. McSwain,* contra, cite: *Effect of attachment:* 83 S. C. 544; 57 S. C. 77; 4 Cyc. 775; 19 S. C. 526; 53 S. C. 110; 54 S. C. 582. *A broker is an agent:* 19 S. C. 191; 28 Supt. Ct. R. 528; 38 S. C. 173; 129 U. S. 193; 198 U. S. 424; 28 Sup. Ct. R. 515. *Carrying on business in this State:* Code 1912, 2373-76; 76 S. C. 218; 73 S. C. 576; 76 S. C. 343; 61 S. C. 361; 74 S. C. 72. *A foreign corporation doing business here impliedly submits to the laws of the State:* 27 Supt. Ct. R. 497; 106 U. S. 222; 83 S. C. 424.

October 30, 1912. The opinion of the Court was delivered by

Mr. Justice Hydrick.   The plaintiffs, who are residents of this State, brought this action against defendant, a foreign corporation, doing business in this State, to recover $353.38 damages alleged to have been sustained by them on account of the unsoundness of a carload of corn sold to them by defendant through E. C. Chapman, a broker, residing at Cross Hill, S. C.  The corn was to be and was delivered to plaintiffs at Lota, S. C.  They paid for it, and began to unload the car, when, as they allege, they discovered that only a small quantity of corn on top of the bulk in the car was good and of the quality they contracted for, while the entire mass beneath was mildewed and unsound, so that it was unfit for use, and it was, for that reason, condemned by the commissioner of agriculture, who ordered that three-fourths of it be destroyed, and that the rest be used only for feeding certain kinds of stock.

For the purpose of obtaining a personal judgment against defendant for the damages claimed, plaintiffs caused the summons and complaint herein to be served on J. W. Ropp, a broker, residing at Cross Hill, S. C., claiming that he was the agent of defendant in this State.

The defendant put in a special appearance, and moved to vacate the service, on the ground that Ropp was not its agent.  The motion was heard on affidavits.  The Court found that Ropp was defendant's agent; and, therefore, held that the service was good.

As this is an action at law, this Court has no power to review the findings of the Circuit Court, unless it is wholly unsupported by evidence. *Hester* v. *Raisin Fert. Co.,* 33 S. C. 609, 12 S. E. 563; *Pollock* v. *Assn.,* 48 S. C. 65, 25 S. E. 977; *Jenkins* v. *Penn. Bridge Co.,* 73 S. C. 526, 53 S. E. 991.

There is more of conclusion than of fact stated in the affidavits.  It matters not, however, that defendant's general manager swears that Ropp was not defendant's agent and

that he had no authority to accept service of legal papers for defendant, or that plaintiffs' witnesses swear that he was defendant's agent.   If we accept as competent evidence only the facts stated, and the inferences fairly and legally deducible from the facts and circumstances appearing in the affidavits, it cannot be said that the finding of the Circuit Judge is wholly unsupported by evidence.

E. C. Chapman swears that at the time of the sale of the car of corn to the plaintiffs, and for some time prior thereto, he was employed by defendant, as its agent, to solicit from citizens of Laurens county contracts for the sale of corn and other provisions; that he sold the car of corn to plaintiffs and received a check from them for the price, which he forwarded to defendant; that when the corn arrived at Lota, S. C., he inspected it, and, finding it damaged, he reported the fact to defendant, whereupon they removed him from being their agent, and appointed Ropp to act as their agent in the sale of corn, etc.   Numerous witnesses swear that, at the time the service was made upon him, and for some time prior thereto, Ropp was the agent of defendant and was soliciting orders for grain and other provisions for the defendant, and that such orders were filled by the defendant.   It appears also that, in taking orders, Ropp used bill heads with defendant's name thereon, and that defendant billed out the goods ordered on similar bill heads.   In his affidavit, Ropp says, "that he represents the Adams Grain and Provision Company, defendant, at Cross Hill, S. C., on commission only, receiving brokerage fees of three dollars for each car of corn sold and ordered through the defendant herein."

From the facts stated it is clearly inferable that Ropp's relation to defendant was not merely that of a broker negotiating a single transaction, but that, as he expressed it, he represented the defendant at Cross Hill; that is to say, that he was employed by defendant to solicit custom for it under

agreement that he was to be paid a commission on sales made, and it is also inferable that Ropp would get his commissions on all sales made to customers at Cross Hill by defendant, whether the orders were sent in by Ropp or not, and that defendant paid these commissions, and not the local merchants.    He must have had authority to quote prices and terms, and in doing so and in making representations as to the quality of the goods sold, he was clearly representing the . defendant.    Therefore, he had authority to contract for defendant.    Where a person has authority to contract for a foreign corporation, he is certainly its agent for the purpose of accepting service of process under our statute. But, in *Jenkins* v. *Bridge Co.,* 73 S. C. 532, 53 S. E. 991, the Court held that even the absence of power to contract was not conclusive that an agent did not sufficiently represent the company to receive service, saying: "The test of agency is not the power to make a contract binding the employer.    Such power shows agency, but agency may also be shown by the fact that a person represents the master in some one or more of his relations to others, even though he may not have power to contract.    The statute makes service on 'any agent' of a foreign corporation sufficient. The statute, therefore, does not require that the agent shall be general, but is complied with by a service upon an agent having limited authority to represent his principal."

Generally speaking, a broker is an agent.    19 Cyc. 191 *et seq.*    It is a matter of common knowledge that some of them are invested with more authority than others.    In some instances, their authority is limited to the finding of a buyer or seller of a specific thing at a given price,—and is further limited to the single transaction, so that when it is completed, they no longer represent their principals in any sense of the word; on the other hand, it is equally well known that the scope of their authority and the duration of their appointment is often more extensive, and that they are not only invested with authority to make contracts, binding

upon their principals, but also with discretion as to the terms thereof. So that, because Ropp was merely a broker, it does not follow that his authority to represent the defendant began and ended with the consummation of each sale. If that were so, why did the defendant discharge Chapman and employ Ropp?

It will not be necessary to the decision of this case to decide the question whether service upon *"any agent"* of a foreign corporation, within the State, as provided in section 155 of the Code, hereinafter quoted, would be sufficient to give the Court jurisdiction to render a personal judgment against the corporation. The real question for decision here is : Was Ropp an agent sufficiently representative of the defendant that, under the facts and circumstances, and the law of the State, under which the defendant entered into the State to do business, and to which it thereby impliedly assented and impliedly agreed that it should control in its dealings with the citizens of this State, the Court might reasonably and justly infer authority on his part to receive service for the defendant? The question is not whether such authority was expressly conferred upon him, for express authority to that end is not prerequisite to the validity of the service; for, as said by Mr. Justice Peckham, in *Conn. Mut. Life Ins. Co.* v. *Spratley,* 172 U. S. 602, 43 L. ed. 574: "In the absence of any express authority, the question depends upon a review of the surrounding facts and upon the inferences which the Court might properly draw from them. If it appears that there is a law of the State in respect to the service of process on foreign corporations, and that the character of the agency is such as to render it fair, reasonable and just to imply an authority on the part of an agent to receive service, the law will and ought to draw such an inference and to imply such authority, and service under such circumstances and upon an agent of that character would be sufficient."

Subject to some exceptions, not necessary to mention here, as they do not apply to this case, the States may prohibit foreign corporations from doing business therein altogether. It follows that they may impose such conditions upon the privilege of doing business therein by such corporations as they think proper, no matter how onerous, or even how arbitrary they may be. *Ins. Co. v. Bradley,* 83 S. C. 418, 65 S. E. 433. The Courts are generally agreed that by entering a State and doing business therein a foreign corporation should be held to impliedly assent to the conditions prescribed by the legislature of such State, upon which alone such business can be lawfully conducted therein. Therefore, such conditions enter into and become elements of contracts made by such corporations with the citizens of the State. The principle is thus stated by Mr. Freeman, in the note to *Abbeville etc. Co. v. Western etc. Co.,* 61 S. C. 361, 85 Am. St. R., at page 913, 39 S. E. 559, 55 L. R. A. 146: "As it is not the mere presence of an officer or agent of a corporation within the State or country which gives its Courts jurisdiction, it is clear that such jurisdiction must be supported by some other and more adequate foundation, and such can be found, as already stated, in some voluntary act of the corporation, which is equivalent to a waiver of the right to object to the jurisdiction of the Court, either altogether, or in relation to some transaction or class of transactions. This waiver is necessarily implied from what is commonly called 'doing business within the State.' Each State has the right to exclude foreign corporations from exercising their franchises or doing business therein, and when, instead of so excluding them, it expressly or impliedly permits them to do business within its limits, it may be assumed to have stipulated for, and the corporation to have consented that citizens and residents of the State should not be without redress there against the corporation when causes of action arise against it or in favor of them. At all events, it is admitted, practically without

dissent, that a corporation doing business within a State or county thereby becomes a resident thereof to an extent which authorizes the legislature to enact laws providing for the service of process within its limits upon any officer or agent of the corporation who may be found therein, and, upon such service, to proceed to final judgment to the same extent, and with like effect, as if it were a natural person not a citizen of the State, but personally served with process therein by authority of its laws." (Citing numerous cases.)

In the light of this principle, let us see what conditions have been imposed by the legislature of this State, and, impliedly agreed to by defendant, as evidenced by the act of entering the State and doing business therein. The second paragraph of section 155 of the Code of Procedure provides the manner in which services of process may be made upon foreign corporations in the following language: "Such service can be made in respect to a foreign corporation only when it has property within the State, or the cause of action arose therein, or where such service shall be made in this State personally upon the president, cashier, treasurer, attorney or secretary, or any agent thereof." The general policy of the State with respect to foreign corporations and conditions upon which they are allowed to do business therein will be found in chapter XLIV of volume I, Code 1902. One of the conditions therein prescribed is that each such corporation shall file with the Secretary of State a written stipulation or declaration, designating its principal place of business within the State, where legal papers may be served upon it, and the manner of such service is therein prescribed. Another condition precedent is that all actions, arising out of business done or contracts made with the citizens of the State, commenced in the Courts of this State, shall be tried therein, and said Courts shall have exclusive jurisdiction of such actions, saving the right of appeal to the Supreme Court of the United States.

It follows that the doing business within the State by defendant creates an implied agreement on its part that service of process upon "any agent" of defendant within the State will bring it within the jurisdiction of the Courts of the State, and that their jurisdiction will not be questioned by defendant with regard to any action commenced therein, arising out of any business transaction had or contract made by defendant with any citizen of the State. In other words, defendant has impliedly agreed to waive the right to object to the jurisdiction of the Courts of this State, when sued therein in such actions. The Supreme Court of the United States, whose decisions upon the question involved are controlling authority, has, in several cases, sanctioned the right of the States to enact such statutes as will enable their Courts to acquire jurisdiction of foreign corporations doing business therein on the ground of the convenience of their citizens.

In *Lafayette Ins. Co.* v. *French,* 18 How. 404, 15 L. ed. 451, a foreign insurance company was sued in the Courts of Ohio by service of process on its agents within the State. The Court, by Mr. Justice Curtis, said: "A corporation created by Indiana can transact business in Ohio only with the consent, express or implied, of the latter State. This consent may be accompanied by such conditions as Ohio may think fit to impose; and these conditions must be deemed valid and effectual by other States, and by this Court, provided they are not repugnant to the Constitution or laws of the United States, or inconsistent with those rules of public law which secure the jurisdiction and authority of each State from encroachment by all others, or that principle of natural justice which forbids condemnation without opportunity for defense. In this instance, one of the conditions imposed by Ohio was, in effect, that the agent who should reside in Ohio and enter into contracts of insurance there in behalf of the foreign corporation, should also be deemed its agent to receive service of process in suits founded on such contracts.

We find nothing in this provision either unreasonable in itself, or in conflict with any principle of public law. It cannot be deemed unreasonable that the State of Ohio should endeavor to secure to its citizens a remedy, in their domestic forum, upon this important class of contracts made and to be performed within that State, and fully subject to its laws; nor that proper means should be used to compel foreign corporations transacting this business of insurance within the State, for their benefit and profit, to answer there for the breach of their contracts of insurance there made and to be performed. * * * Now, when this corporation sent its agent into Ohio with authority to make contracts of insurance there, the corporation must be taken to assent to the condition upon which alone such business could be there transacted by them; that condition being, that an agent, to make contracts, should also be the agent of the corporation to receive service of process in suits on such contracts, and, in legal contemplation, the appointment of such agent clothed him with power to receive notice for and on behalf of the corporation, as effectually as if he were designated in the charter as the officer on whom process was to be served; or, as if he had received from the president and directors a power of attorney to that effect. * * * We consider this foreign corporation, entering into contracts made and to be performed in Ohio, was under an obligation to attend, by its duly authorized attorney, on the Courts of that State, in suits founded on such contracts, whereof notice should be given by due process of law, served on the agent of the corporation resident in Ohio, and qualified by the law of Ohio and the presumed assent of the corporation to receive and act on such notice; that this obligation is well founded in policy and morals, and not inconsistent with any principle of public law; and that when so sued on such contracts in Ohio, the corporation was personally amenable to that jurisdiction; and we hold such a judgment, recovered after such notice, to be as valid as if the corporation

had had its habitat within the State; that is, entitled to the same faith and credit in Indiana as in Ohio, under the Constitution and laws of the United States."

In *Conn. Mut. Ins. Co.* v. *Spratley, supra,* the case of *Lafayette Ins. Co.* v. *French* was cited on this point with approval, and the learned Judge who wrote the opinion added, with regard to the act of Tennessee, which was under consideration in that case: "The act did not provide for an express consent to receive such service, on the part of the company. *The consent was implied because of the company entering the State and doing business therein subject to the provisions of the act."* (Italics added.)

With regard to the justice of such legislation, the same learned Judge said, in the same opinion, at page 619, page 575, L. ed.: "A vast mass of business is now done throughout the country by corporations which are chartered by States other than those in which they are transacting part of their business, and justice requires that some fair and reasonable means should exist for bringing such corporations within the jurisdiction of the Courts of the State where the business was done out of which the dispute arises. It was well said, in *Baltimore & Ohio Railroad Company* v. *Harris,* 12 Wall. 5, at 83 (20 L. ed. 354, at 359), by Mr. Justice Swayne, in speaking for the Court in regard to service on an agent, that 'when this suit was commenced, if the theory maintained by counsel for the plaintiff in error be correct, however large or small the cause of action, and whether it were a proper one for legal or equitable cognizance, there could be no legal redress short of the seat of the company in another State. In many instances the cost of the remedy would have largely exceeded the value of its fruits. In suits local in their character, both at law and in equity, there could be no relief. The result would be, to a large extent, immunity from all legal responsibility.' The Court, in view of these facts, was of opinion that Congress intended no such result."

8—93

Notwithstanding the propriety and justice of such statutes, the Courts ought not to sanction a method of service which would be tantamount to a deprivation of the defendant of its property without due process of law. In other words, the convenience of the citizens of the State must be subordinate to that principle of natural justice that no man shall be condemned without a hearing, nor his property taken from him without due process of law, which implies due notice of the proceeding against him. Therefore, to acquire jurisdiction of a foreign corporation, doing business within the State, it has been held by the Court, whose decisions are controlling authority in such matters, that the person upon whom the service is made within the State must bear such a representative relation to the corporation that the Court can fairly, reasonably and justly infer from all the facts and circumstances, including the statutes of the State, and the assent to them implied by doing business in the State, an implied legal authority in the person served to accept service of legal process for the corporation. *Conn. Mut. Ins. Co.* v. *Spratley, supra.*

Statutes authorizing such service upon foreign corporations are based upon the presumption that those employed by the corporations will be diligent in the discharge of their duties to their employers. Experience fully justifies the presumption, for observation has shown that such service almost invariably results in notice, and an opportunity to defend.

The chief object of service of process is to give notice to the party served of the proceeding against him. And, while we do not mean to say that notice or knowledge of the proceeding alone would be sufficient, without bringing the defendant into Court by legal service, the fact that defendant did have notice of this action in ample time to appear and move to vacate the service, and, therefore, in time to defend on the merits, if it had seen fit to do so, is mentioned as one of the facts of the case disclosed by the record.

Taking all things into consideration, there was some evidence to support the finding that Ropp was an agent of such representative character of defendant that the Court below could fairly, reasonably and justly infer that he had authority implied by the law to accept service of process; and, therefore, that the service was good.

The order appealed from is, therefore, affirmed, and the case is remanded to the Circuit Court, with leave to defendant to answer the complaint within twenty days after the service upon the attorneys for appellant of notice of the filing of the remittitur in the Circuit Court.

MR. JUSTICE WATTS *disqualified.*