ARNOLD TRANSIT COMPANY v CITY OF MACKINAC ISLAND

Docket No. 78-4743. Submitted January 16, 1980, at Lansing.—Decided August 11, 1980. Leave to appeal applied for.

Arnold Transit Company, Straits Transit, Inc., Shepler's, Inc., and Argosy Boatline Incorporated brought suit challenging the validity of defendant's ferry boat code. Mackinac Circuit Court, Martin B. Breighner, J., granted defendant's motion for partial summary judgment and, after trial on the unresolved issues, entered judgment for defendant, upholding the validity of its ferry boat code. Plaintiffs appeal. *Held:*

1. Defendant, City of Mackinac Island, has the power to enact a ferry boat code prohibiting the operation of plaintiffs' boats without a franchise by virtue of the power delegated to it by the state in its city charter.

2. Defendant did not violate the requirements of the Open Meetings Act prior to the adoption of the ferry boat code, even though it failed to comply with all the technical requirements prescribed by the statute, since it substantially complied with the statute.

Affirmed.

1. FRANCHISES — STATE — MUNICIPALITIES — FERRY BOAT OPERATORS.
   State government has the exclusive power to franchise ferry boat operators, and power to franchise may be acquired by a municipality by delegation from the state.

2. FRANCHISES — MUNICIPALITIES — COLLECTION OF EXCESS MONIES — AUTHORITY TO FRANCHISE — FERRY BOAT OPERATORS.
   A municipality's authority to collect monies in excess of those

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 5] 35 Am Jur 2d, Ferries § 4.
  56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions § 193.
  36 Am Jur 2d, Franchises § 11.
[3, 6] 35 Am Jur 2d, Ferries §§ 8, 53.
  36 Am Jur 2d, Franchises § 25.
[4] 35 Am Jur 2d, Ferries §§ 4, 6.
[7, 8] 2 Am Jur 2d, Administrative Law §§ 228, 229.
  Validity, construction, and application of statutes making public proceedings open to the public. 38 ALR3d 1070.

required to regulate a ferry boat operation must be derived from its authority to franchise.

3. FRANCHISES — COSTS OF REGULATIONS — EXCESS TOLLS — RATIONALE.

The ability of the grantor of a franchise to exact from the franchisee more than the cost of regulating the franchised operation stems from the fact that a franchise is a right granted for a consideration.

4. FRANCHISES — FERRY BOAT OPERATIONS — ESTABLISHMENT — TOLLS — DEFINITION.

A ferry is by definition a franchise, as well as the privilege of establishing and operating a ferry and taking tolls for its use.

5. FRANCHISES — LICENSES — GRANT OF POWER — ASSESSMENT OF PAYMENT.

The granting by the state of the power to license ferries along with the power to assess payment for such license amounts to the granting of the power to franchise.

6. FRANCHISES — MUNICIPALITIES — REVENUE — SUBJECT OF GRANT — RIGHTS WITHIN THE PUBLIC DOMAIN.

Whether or not a municipality may derive revenue from the granting to an individual of the right to do something turns not on the use of such words as license, authorize, establish, or franchise but on the subject of the grant, those grants of rights which are peculiarly in the public domain, such as public utilities, highways, bridges, and ferries, being considered grants of rights approaching property rights for which a consideration may be exacted.

7. STATUTES — OPEN MEETINGS ACT — REQUIREMENTS — NOTICE.

The Open Meetings Act is designed to require public bodies to open their meetings to the public, with notice required to that end (MCL 15.261 et seq.; MSA 4.1800[11] et seq.).

8. STATUTES — OPEN MEETINGS ACT — NOTICE — SUBSTANTIAL COMPLIANCE RULE.

The notice provisions of the Open Meetings Act are essentially procedural, and, while mandatory, rigid adherence is not required where it is clear that a substantial compliance provides realistic fulfillment of the purpose for which the mandate was incorporated (MCL 15.265-15.266; MSA 4.1800[14]-4.1800[16]).

*Lester N. Turner, P.C.* (by *Lester N. Turner* and *Steven M. Basha),* for plaintiffs.

*Fraser, Trebilcock, Davis & Foster, P.C.* (by *Michael E. Cavanaugh* and *Joel E. Dowley),* for defendant.

Before: BEASLEY, P.J., and D. E. HOLBROOK, JR., and R. E. ROBINSON,* JJ.

R. E. ROBINSON, J. Plaintiffs appeal from a partial summary judgment and judgment following a bench trial upholding the validity of the City of Mackinac Island Ferry Boat Code.

Argosy Boatline Incorporated is no longer a party to this appeal, having terminated its operations. The other plaintiffs operate ferry boats between the City of St. Ignace and the City of Mackinac Island, and the Village of Mackinac City and the City of Mackinac Island.

Plaintiffs' suit challenges the validity of the ferry boat code, adopted by defendant on June 29, 1977, which, among other things, imposes a fee based upon one and one-half percent of the gross receipts of each ferry boat operator, regulates the schedules, rates, tariffs, and safety standards of each operator, and imposes criminal sanctions, including a $500 per day fine, for violation of the ordinance. Plaintiffs' challenge raises a variety of issues.

I

*Does defendant city have power to enact a ferry boat code prohibiting the operation of plaintiffs' boats without a franchise?*

We think it does.

None of the parties quarrel with the rule that state government has the exclusive power to fran-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

chise ferry boat operators, 12 McQuillin, Municipal Corporations (3d ed), § 34.14, p 45, nor do they quarrel with the rule that a municipality may acquire this power by delegation from the state. *City of Niles v Michigan Gas & Electric Co,* 273 Mich 255, 265; 262 NW 900 (1935).

The parties also agree that if defendant is to have the authority to collect monies in excess of those required to regulate the ferry boat operation, such authority must be derived from its authority to franchise.

At this point, agreement ends, plaintiffs contending that defendant does not have the power to franchise ferry boat operations and defendant contending that it does.

The ability of the grantor of a franchise to exact from the franchisee more than the cost of regulating the operation stems from the fact that a franchise is a right (sometimes referred to even as a property right) granted for a consideration.

"Kent says that the privilege of establishing a ferry and taking tolls for the use of the same is a franchise, and that 'an estate in such a franchise, and an estate in land, rest upon the same principle, being equally grants of a right or privilege for an adequate consideration' ". *Louisville & Jeffersonville Ferry Co v Kentucky,* 188 US 385, 394-395; 23 S Ct 463; 47 L Ed 513 (1902), quoting from 3 Kent, Com 458, 459.

Defendant claims its authority to franchise from the following legislative delegation in its city charter:

"Sec. 1. Said city of Mackinac Island shall, in addition to such other powers as are herein conferred, have the general powers and authority in this chapter mentioned; and the council may pass such ordinances in

relation thereto and for the exercise of the same, as they may deem proper, namely:

* * *

"Thirteenth, To establish or authorize, license and regulate ferries to and from the city, or any place therein, or from one part of the city to another, and to regulate and prescribe from time to time the charges and prices for the transportation of persons and property thereon * * *."

Plaintiffs reply that, since municipal powers must be narrowly construed and that power cannot be inferred where the Legislature has not specifically bestowed such power, the failure of the Legislature to use the magic word "franchise" leaves defendant without such power. While we do not concede the validity of the narrow construction view espoused by plaintiffs, their argument overlooks the fact that a ferry is by definition a franchise:

"A ferry is a right or franchise." 3 McQuillin, Municipal Corporations (3d ed), § 11.15, p 27.

"Ferry. * * * In law it is treated as a franchise." Black's Law Dictionary (4th ed), p 747.

"Now what is a ferry? It is a species of franchise." *Chilvers v The People,* 11 Mich 42, 53 (1862).

Moreover, "establish" and "authorize" have been used interchangeably with franchise.

"[T]he privilege of establishing a ferry and taking tolls for the use of the same is a franchise." *Louisville & Jeffersonville Ferry Co, supra,* 394.

"The right or privilege to establish and operate a public ferry is a franchise." 35 Am Jur 2d, Ferries, § 6, p 449.

"No private person can establish a public highway, or a public ferry or railroad, or charge tolls for the use of

the same, without authority from the legislature * * *. These are franchises." *California v Central Pacific R Co,* 127 US 1, 40; 8 S Ct 1073; 32 L Ed 150 (1887).

And in *Chilvers, supra,* 49-50, our Supreme Court found that a charter provision giving the City of Detroit the power to license ferries and "to prescribe the sum of money to be paid therefor into the treasury of the corporation" gave the city the power to franchise ferries and to make such licenses a source of revenue for the city. The Court apparently found that the granting of the power to license along with the power to assess payment for such license amounted to the granting of the power to franchise. Compare such language with the provisions of § 21, Chapter XVI of defendant's charter:

"Sec. 1. The council of said city may regulate and license ferries from such city or any place of landing therein to the opposite shore, or from one part of the city to another; and may require the payment of such reasonable sum for such license as to the council shall seem proper." 1899 LA 437, chapter XVI.

It is apparent from a reading of the cases that whether a municipality may derive revenue from the granting to an individual of the right to do something turns not so much upon using the magic word among license, authorize, establish, franchise, etc., as it does upon the subject of the grant, those grants of rights which are peculiarly in the public domain, such as public utilities, highways, bridges, and ferries, being considered grants of rights at least approaching property rights for which a consideration can be exacted.

We find no merit in plaintiffs' contention that their ferry boats have no contact with defendant's

mainland since they dock at terminals owned by plaintiffs. This argument overlooks the fact that the terminals do not rest in a vacuum but are firmly attached to defendant's mainland.

While defendant failed to include in the purpose of its ferry boat code the raising of revenue, its validity has not been attacked on that ground, probably because Michigan does not hold ordinances to the same exacting one-object requirement as it does its statutes. Nor has anyone been misled by the defendant's dereliction in this regard since it has been clear from the outset that all parties considered the power of defendant to raise revenue by means of this ordinance as the critical issue to be presented to the courts.

## II

*Did defendant council violate the requirements of the open meetings act prior to adoption of the ferry boat code?*

We think not.

The pertinent sections of the act are:

"Section 2(b). 'Meeting' means the convening of public body * * * for the purpose of deliberating toward or rendering a decision on a public policy." MCL 15.262(b); MSA 4.1800(12)(b).

"Section 3(3). All deliberations of a public body constituting a quorum of its members shall take place at a meeting open to the public." MCL 15.263(3); MSA 4.1800(13)(3).

"Section 4(b). A public notice for a public body shall always be posted at its principal office and any other locations considered appropriate by the public body". MCL 15.264(b); MSA 4.1800(14)(b).

"Section 5(1). A meeting of a public body shall not be held unless public notice is given as provided in this section." MCL 15.265(1); MSA 4.1800(15)(1).

"Section 5(4). For a rescheduled regular or a special meeting of a public body, a public notice stating the date, time, and place of the meeting shall be posted at least 18 hours before the meeting. The requirement of 18 hour notice shall not apply to special meetings of subcommittees of a public body." MCL 15.265(4); MSA 4.1800(15)(4).

"Section 9(1). Each public body shall keep minutes of each meeting * * *." MCL 15.269(1); MSA 4.1800(19)(1).

"Section 10(2). A decision made by a public body may be invalidated if the public body has not complied with the requirements of Section 3 * * * (3) in making the decision or if failure to give notice in accordance with Section 5 has interfered with substantial compliance with Section 3 * * * (3) and the court finds that the noncompliance or failure has impaired the rights of the public under this act." MCL 15.270(2); MSA 4.1800(20)(2).

A chronology of events leading to adoption of the ferry boat code is a necessary preliminary to a discussion of this issue.

On March 30, 1977, defendant's clerk wrote plaintiffs inviting them to discuss with defendant its proposal to levy a "franchise license fee" upon plaintiffs' boats.

On May 25, 1977, defendant's council met in regular session and discussed the proposed code. Plaintiffs were sent notice of this meeting.

On June 22, 1977, defendant's council met in regular session and discussed the proposed code. Representatives of plaintiffs were present.

On June 27, 1977, a special meeting was held at which all members of the council were present, the purpose of the meeting being a discussion of the code. No representatives of plaintiffs were present at this meeting. The purpose of this meeting, its date, time, and place, was announced at the meeting on June 22.

On June 29, 1977, a regular meeting of defendant's council was held and the ferry boat code was adopted.

Plaintiffs, pursuant to § 10(2) of the Open Meetings Act, challenge the validity of defendant's action in adopting the code at its June 29th meeting for (1) failure of defendant to post notice of the June 27th meeting as required by § 5(1)(4) and § 3(3) of the act, and (2) failure of the defendant council to keep minutes of the June 27th meeting.

The Open Meetings Act is a relatively new law in Michigan, consequently no body of case law has developed as a guide to its application. However, its short title and its expressed purpose make clear that the act is designed to require public bodies to open their meetings to the public, with notice required to that end.

It appears that defendant clearly violated the technical requirements of the Open Meetings Act by failing to post notice of the June 27th meeting at the City Hall 18 hours in advance and by failing to keep minutes of the meeting—at which deliberations were held directed toward adoption of a ferry boat code.

Defendant attempts to justify this dereliction by calling the June 27th meeting a meeting of a "committee of committees", presumably another term for committee of the whole, since all of the council members were present. To permit this, however, would make it too easy for a public body to avoid the act by conveniently labeling its meetings "committee of committees".

Nevertheless, it does not appear that there was any desire by defendant to conduct its meeting out of public sight or that it in fact did so. From the beginning of its deliberations in March 1977, it, with one exception, observed the notice require-

ments of the act; it invited input from plaintiffs; it sent plaintiffs notices not required by the act; at the June 22nd meeting which was attended by plaintiffs, it announced the time, place, and purpose of the June 27th meeting. Although apparently not requested by defendant, the date, time, and place of the meeting was published two full days before June 27 in the Town Crier, a weekly newspaper having general circulation in defendant city. The meeting was open to the public and was attended by a newspaper reporter. From the trial testimony, it is apparent that had notice been posted at City Hall pursuant to statute, none of the plaintiffs' representatives would have seen it.

The Texas Court of Appeals, examining a notice requirement similar to Michigan's appearing in Texas' open meetings law, found that notice posted 34 hours prior to meeting when 72 hours was required, was substantial compliance with the statute.

"Even though provisions of the statute are mandatory, we hold that the 'notice' provisions of the statute are subject to the substantial compliance rule * * * The rationale of the substantial compliance rule is that while the notice provisions in statutes are mandatory, they are essentially procedural; that rigid adherence to such a procedural mandate will not be required if it is clear that a substantial compliance provides realistic fulfillment of the purpose for which the mandate was incorporated in the statute." *Stelzer v Huddleston,* 526 SW2d 710, 713 (Tex App, 1975).

Likewise do we find substantial compliance here.

Plaintiffs additionally complain that the code must fail because defendant council failed to keep minutes at the June 27th meeting, contrary to § 9(1) of the Open Meetings Act. This is not a

reason, under § 10(2) of the act, for invalidating the ordinance.

## III

We have carefully reviewed plaintiffs' other allegations of error and conclude that they are without merit.

## IV

The City of Mackinac Island cross-appeals claiming that it should be granted a money judgment in the amount of the franchise fees owed from the effective date of the ferry boat code, July 19, 1977. At the conclusion of the proceedings below, the city prepared a final order for the consideration of the trial court purportedly effectuating the court's opinion. However, the city unilaterally inserted language ordering plaintiffs to submit the information necessary to calculate the retroactive fees and indicating that, upon calculation, a money judgment will be entered. The trial court struck this language from the order.

We conclude that defendant is not entitled to the relief sought. This is a suit for declaratory relief in which plaintiffs challenge the validity of the ferry boat code. Defendant has prevailed in full because the ferry boat code has been upheld. Since there was no cross-complaint filed below, defendant is not entitled to affirmative relief in this proceeding. Therefore, defendant's cross-appeal is hereby dismissed.

Affirmed. No costs, a public question being involved.