# STATE OF MICHIGAN

# COURT OF APPEALS

HARLAN VERMILYA, DEBBIE SAWYER,
HERMAN DESHAW, LILLIAN DESHAW,
KELLY BUCZEK, RICK BUCZEK, BILL
BLANCHARD, and LAURA ANKLAM,

UNPUBLISHED
November 4, 2014

       Plaintiffs/Counter-Defendants-
       Appellants,

and

KIM A. HIGGS,

       Plaintiff/Third-Party Defendant-
       Appellant,

v

No. 315403
Bay Circuit Court
LC No. 09-003024-CZ

DELTA COLLEGE BOARD OF TRUSTEES,
DELTA COLLEGE PRESIDENT'S
COMPENSATION COMMITTEE, JACK R.
MACKENZIE, DR. THOMAS H. LANE, and
KAREN L. LAWRENCE-WEBSTER,

       Defendants/Counter-Plaintiffs/
       Third-Party Plaintiffs-Appellees,

and

DELTA COLLEGE PRESIDENT,

       Defendant/Counter-Plaintiff-
       Appellee,

and

MICHIGAN COMMUNITY COLLEGE RISK
MANAGEMENT AUTHORITY,

       Defendant-Appellee,

-1-

and

CUMMINGS, MCCLOREY, DAVIS & ACHO,

      Defendants.

---

Before: FITZGERALD, P.J., and GLEICHER and Ronayne-KRAUSE, JJ.

PER CURIAM.

      Plaintiffs appeal as of right from an order of dismissal entered on March 12, 2013, in this action alleging violations of the Open Meeting Act (OMA), MCL 15.261 *et seq*., as well as unlawful expenditures of public funds. We affirm in part, reverse in part, and remand.

      Over the course of three amended complaints, plaintiffs averred that defendants Delta College Board of Trustees (the Board) and the Delta College Presidents Compensation Committee (the Compensation Committee) had committed multiple violations of the OMA and that the Board, the Delta College President, and the Michigan Community College Risk Management Authority (MCCRMA) had made unlawful expenditures of public funds. Plaintiff Kim A Higgs, who originally represented the sole plaintiff, Harlan Vermilya, is an elected member of the Board. Higgs was eventually added as a party plaintiff and was disqualified from representing the other plaintiffs in this case.

## I. FACTS AND PROCEDURAL HISTORY

      In 2008, the Board appointed defendant Trustees Jack R. MacKenzie, Dr. Thomas H. Lane, and Karen Lawrence-Webster to the Compensation Committee, a subcommittee formed to negotiate the renewal terms of an employment contract with the college president, Dr. Mary Jean Goodnow, and make a recommendation to the Board regarding a proposed contract.[1]

      There is no dispute that the Board and the Compensation Committee are public bodies pursuant to the OMA. See MCL 15.262(a). The Compensation Committee held three special meetings on September 2, October 10, and November 3, 2008. A public notice of each of these committee meetings was posted and published before each meeting took place.

      Higgs and Board member Earl Selby also attended the October 10 and November 3 committee meetings. During these meetings, Higgs apparently expressed concern about the legality of a proposed contract provision that would have made the president's compensation retroactive to July 1, 2008, as well as a provision to indemnify the president for personal income tax liability in the event that the IRS determined that the housing provided to her by the college

---

[1] Dr. Goodnow had been appointed as President in 2005 and initially served under a three-year contract that expired on July 1, 2008.

constituted taxable income. In light of these concerns, Delta College General Counsel Leslie Myles-Sanders employed the assistance of outside counsel, Janet Lanyon, to draft contact language for the employment agreement. She provided Lanyon with copies of the committee meeting minutes, as well as a memo dated August 25, 2008, that was prepared by Dr. Goodnow and presented to the committee at the September 2, 2008, meeting. Lanyon drafted the language to be included in the agreement, and the final contract language was provided by Lanyon to Miles-Sanders on the night of November 11, 2008, just before the regular meeting of the Board at which the Board was to vote on ratification of the contract. The Board as a whole considered and voted on the president's final employment agreement on November 11, 2008. The Board voted 6 to 1 to ratify the employment agreement as presented, with Higgs being the sole "no" vote.

On January 13, 2009, Higgs, as the attorney for Harlan Vermilya, filed the present action against the Board, the Compensation Committee, and committee members MacKenzie, Lane, and Lawrence-Webster, alleging two violations of the OMA. On January 26, 2009, after being served with the initial complaint, the Board posted notice and held a special meeting for the purpose of entering a closed session to discuss the litigation with its counsel. The Board ultimately did not enter a closed session because Higgs, at that time the attorney for the sole plaintiff, refused to leave the room to allow the Board to consult confidentially with its counsel.

On February 13, 2009, the complaint was amended to add 46 more plaintiffs, as well as defendants Dr. Goodnow, the law firm of Cummings, McClorey, Davis & Acho, P.C., and the college's self-insurance pool, MCCRMA. The first amended complaint added two more claims alleging violations of the OMA against the Board regarding the notice provided for the January 26, 2009, meeting and for allegedly failing to post timely its regular meeting schedule for 2009. The first amended complaint also pleaded two claims of illegal expenditure of public funds in the employment agreement between the Board and Dr. Goodnow and in the MCCRMA's defense of Higgs' 2007 litigation against the Board for alleged violations of the OMA, and the MCCRMA's appointment of the law firm for that purpose.

The trial court granted plaintiffs leave to amend their complaint again on June 4, 2009. The second amended complaint omitted most of the plaintiffs, leaving a total of eight plaintiffs, and dismissed the law firm from the matter. A third amended complaint was filed to add Higgs as a party plaintiff.

All defendants filed their motions for summary disposition on December 28 and 29, 2011. Plaintiff Higgs also filed dispositive motions, one with regard to the Delta College defendants and one with regard to the MCCRMA. After a hearing on February 2, 2012, the court issued an opinion and order. The trial court denied plaintiffs'[2] motion in its entirety, granted summary disposition of all claims against the MCCRMA,[3] and granted summary disposition to

---

[2] Plaintiff Higgs filed the motion for summary disposition and, despite the fact that Higgs was disqualified from representing the other plaintiffs, the trial court considered the motion as being filed on behalf of all plaintiffs.

[3] Plaintiffs have not appealed this ruling.

the Delta College defendants on all claims except for the allegation that the Compensation Committee had conducted deliberations constituting a "meeting" outside an open and properly posted meeting in violation of the OMA, and leaving that lone issue for trial. In an order dated September 13, 2012, the trial court also denied Higgs' motion to allow him to be substituted as counsel for the remaining plaintiffs.

The lone surviving claim under the OMA against the Compensation Committee proceeded to a bench trial on September 19 and 20, 2012, and resulted in a directed verdict and judgment in favor of defendants.[4] Following the trial, defendants sought and were awarded taxable costs. The trial court also granted defendants' request for 1-1/2 times the taxable costs pursuant to MCL 600.2411(1) for actions against public officials alleging failure to perform a duty. Defendants were awarded costs of $719.48.[5]

## II. THE OCTOBER 10, 2008 COMPENSATION COMMITTEE MEETING

Plaintiffs first argue that the trial court erred by finding that the OMA was not violated when a quorum of the Board attended the October 10, 2008, committee meeting that was noticed as a special board subcommittee meeting.

The OMA defines a "meeting" in relevant part as "the convening of a public body at which a quorum is present for the purpose of deliberating toward or rendering a decision on a public policy . . . ." The OMA requires that "All meetings of a public body shall be open to the public and shall be held in a place available to the general public. All persons shall be permitted to attend any meeting except as otherwise provided in this act . . . ." MCL 15.263(1). "All decisions of a public body shall be made at a meeting open to the public," MCL 15.263(2), and "All deliberations of a public body constituting a quorum of its members shall take place at a meeting open to the public except as provided in this section and sections 7 and 8." MCL 15.263(3). "A meeting of a public body shall not be held unless public notice is given as provided in this section by a person designated by the public body." MCL 15.265(1). "A public notice for a public body shall always be posted at its principal office and any other locations considered appropriate by the public body. Cable television may also be utilized for purposes of posting public notice." MCL 15.264(b).

Plaintiffs argue that the Board violated the OMA when it posted the notice of the October 10, 2008, meeting as a subcommittee meeting regarding the president's compensation. They contend that because Higgs and Board member Selby attended the committee meeting, a quorum of the Board was present and, therefore, the meeting should have been noticed as a Board meeting and that the "public should have been informed that business to be undertaken would be considered by the Delta College Board of Trustees rather than the committee specified in the notice." The trial court granted summary disposition under MCR 2.116(C)(10) on the ground

---

[4] No transcript of the trial has been provided to this Court.

[5] This figure represents costs of $479.65, a ½ multiplier of $238.83, for a total of $719.48.

that the meeting was intended as a committee meeting and was properly noticed.[6]  Plaintiffs contend that the trial court wrongfully concluded that Higgs' attendance only created a quorum of the Board because five members of the Board are required to constitute a quorum.  Thus, the attendance of both Higgs and Selby caused a quorum of the Board to be present at the committee meeting.  Plaintiffs concede that a quorum of a board can attend a meeting of a subcommittee as long as the non-committee members do not participate in the discussions or deliberations.  See *Ryant v Cleveland Twp*, 239 Mich App 430; 608 NW2d 101 (2000).  Relying on *Nicholas v Meridian Charter Twp Bd*, 239 Mich App 525; 609 NW2d 574 (2000), they argue, however, that Higgs participated in the discussion and deliberations of the committee and, therefore, the Board violated the OMA because the Board failed to adequately inform the public that the business that was to be undertaken on that day was to be considered by the Board and not by the Compensation Committee.

In *Nicholas*, 239 Mich App 525, non-committee members of the Meridian Township Board attended meetings of the Board's committees, causing a quorum of the Board to be in attendance at several of the committee meetings.  It was undisputed that the non-committee Board members participated in discussions of the committee business.  The plaintiffs claimed that the notices of the committee meetings should have stated that a quorum of the board would be present and discussing township business.  The trial court granted summary disposition to the township, and the plaintiffs appealed.

On appeal, this Court found persuasive OAG 6636, in which the Attorney General addressed a question involving a county planning commission of which two members of the county board of commissioners were also members.  The question arose whether if other county commissioners attended the planning commission meetings so that a quorum of the county commission was present, would the meetings have to be noticed as meetings of the board, rather than the planning commission.  The Attorney General opined that, "As long as the nonmember commissioners did not engage in deliberations or render decision, a meeting need not be posted as a meeting of the board of commissioners." *Nicholas*, 239 Mich App at 531-532.

This Court stated:

While OAG, No. 6636, *supra*, is not controlling, we are persuaded by its reasoning.  We, therefore, conclude that defendants were obliged to inform the public that the business to be undertaken would actually be considered by the township board rather than the particular committee actually specified on the notice.  Because the notices failed to do so, the trial court properly found that defendants had violated the OMA.  However, our review of the record shows that, despite defendants' failure to provide proper notice, there was substantial compliance with the OMA notice requirements.  Everything that was the subject of plaintiffs' complaint occurred during the course of a meeting properly noticed

---

[6] The court stated that "Plaintiff Higgs cannot force the cancellation of the meeting just by attending himself and creating a 'quorum' of the Board, although he does have the right to address the committee on the same basis as a member of the general public."

and open to the public. Nothing that took place was secreted or otherwise unknown to the public. Thus, the purpose of the OMA was essentially and realistically fulfilled. *Arnold Transit Co v City of Mackinac Island*, 99 Mich App 266, 275; 297 NW2d 904 (1980). [*Nicholas*, 239 Mich App at 532.]

The *Nicholas* Court also noted that:

> We recognize that a similar issue was addressed by this Court in *Ryant v Cleveland Twp*, 239 Mich App 430; 608 NW2d 01 (2000). *Ryant*, however, is distinguishable from the case at bar. *Ryant* found no violation of the OMA because the other township board members did not participate in the planning commission's debate. *Id*. at 435-436; However, in the case at bar, there is no dispute that township board members who were not members of the committee did engage in the deliberative process contemplated by the OMA. See also OAG, No. 6636, *supra* at 878. [*Nicholas*, 239 Mich App at 531 n 2.]

In this case, the minutes of the Compensation Committee meeting on October 10, 2008, read as follows:

> **Public Comments:** No members of the public in attendance.
>
> The committee discussed the outcomes of a previous meeting September 2, 2008 at which they had met with Dr. Goodnow and with Debra Lutz regarding proposed provisions of the contract. Members indicated they expected additional information to be provided by Dr. Goodnow in regard to the proposed disability benefit and in the form of a letter from Plante and Moran.
>
> In regard to the proposed indemnification language, members requested L. Myles-Sanders to ascertain whether such coverage already exists.
>
> Members requested L. Myles Sanders to incorporate the factors discussed during the September 2, 2008, meeting into the contract language proposed by Dr. Goodnow. L. Myles-Sanders indicated she would be happy to serve as scribe but would not be able to participate in negotiations since this would constitute a conflict of interest.

The minutes do not reflect that any non-committee member addressed the committee or engaged in any discussions or deliberations.[7] The only evidence presented by plaintiffs regarding the meeting of October 10, 2008, is the affidavit of Higgs in which he avers that:

---

[7] This is in contrast to the minutes of the Compensation Committee meeting of November 3, 2008, which state that the committee received comments from Higgs and referred his comments to outside counsel. The meeting of November 3, 2008, is not at issue in this appeal.

9.  It was my intent that, when I attended the President's Compensation Committee meeting on October 10, 2008, I would participate in the meeting in my capacity as a board member and I did not attempt to address the committee as a member of the public.

11.  All board members who attended the President's Compensation meeting on October 10, 2008, including R. Early Selby and I, actively participated in the discussion and deliberation on the issue of the terms and conditions of the President's employment contract.

Plaintiffs did not supply the court with any documentary or other evidence to demonstrate that either he or Selby engaged in the deliberative process contemplated by the OMA. Although Higgs presented an affidavit in which he generally averred that he and Selby participated in deliberations or decision of the committee, the affidavit does not identify the content or context of the alleged deliberations or decisions. Plaintiffs did not present evidence to create a genuine issue of fact with regard to whether any alleged exchange that occurred between the Compensation Committee and Higgs and/or Selby rose to the level of deliberations. Thus, we conclude that the trial court correctly determined that the attendance of a quorum of the Board at the Compensation Committee meeting did not require that the meeting be noticed as a meeting of the Board. Defendants complied with the OMA by issuing a notice of a meeting. The trial court properly granted summary disposition in favor of defendants.

## III.  THE JANUARY 26, 2009, COMMITTEE MEETING

Plaintiffs argue that the trial court erred by finding that the notice provided with regard to the January 26, 2009, special meeting complied with the OMA. The special meeting was called for the purpose of discussing with legal counsel the litigation filed by Higgs on behalf of plaintiff Vermilya. The posted notice of the meeting states as follows:

DELTA COLLEGE DISTRICT
BOARD OF TRUSTEES

CLOSED SESSION

MONDAY, JANUARY 26, 2009
BOARD ROOM
2:00 p.m.

1.  Call to Order

2.  Public Comments

3.  Closed Session – Discuss specific pending litigation, Vermilya v. Delta College Board of Trustees

4.  Adjournment

Plaintiffs argue that the Board violated the notice provisions of MCL 15.264, 15.265, and 15.267 by posting a defective notice that indicated that the Board was meeting for a closed session of the Board.[8]

Plaintiffs do not dispute that the public notice contained the required contents of a meeting notice. See MCL 15.264(a) and MCL 15.265(4). Plaintiffs contend that the notice violated the OMA because it contained the words "Closed Session." Essentially, plaintiffs contend that because no members of the public attended the meeting, the notice as provided must have suggested to the public that they were not permitted to attend the meeting. Defendants contend that including the words "Closed Session" at the top of the notice informed the public what the meeting would be called for and that the words "Public Comments" in the notice indicated that the meeting would open as a public meeting. They note that the notice itself did not allow the Board to enter a closed session without conforming to the other requirements of the OMA. See MCL 15.267(7). Nonetheless, the Board did not enter into a closed session because Higgs, at that time the attorney for the lone plaintiff, refused to leave the room for the closed session and the roll call vote taken at that time to determine whether the Board would enter into a closed session failed.

Plaintiffs have failed to present any authority to support their argument that the Board violated the OMA by inclusion of the words "Closed Session" in the public notice. The trial court did not err when it granted defendants' motion for summary disposition and denied plaintiffs' motion for summary disposition on the ground that the meeting was noticed as required by the OMA.

## IV. THE REGULAR MEETING SCHEDULE

Plaintiffs argue that the trial court erred when it ruled that plaintiffs failed to present facts to support the allegation that the Board violated MCL 15.265(2) in 2009 when it failed to post notice of the Board's regular meeting schedule within ten days after the first meeting of the year. There is no dispute that plaintiffs did not attach any documentary evidence to their motion for summary disposition with regard to this issue. There is also no dispute that defendants' motion for summary disposition did not seek summary disposition of the claim regarding posting of the 2009 meeting schedule.

On January 25, 2012, Higgs filed a response to defendants' motion for summary disposition to which he attached his affidavit dated January 25, 2012, in which he avers that on January 23, 2009, he had checked the usual posting locations for notices and was unable to find a notice of the regular meeting schedule for 2009. Higgs asserted at the hearing on the motion that defendants did not present evidence to contradict his affidavit and that he was therefore entitled to a declaratory judgment that the OMA was violated.

---

[8] There is no dispute that the Board may meet in a closed session to discuss pending litigation. MCL 15.268(e).

-8-

Counsel for defendants stated that he did not respond to plaintiffs' motion for summary disposition, or move for summary disposition, regarding the claim involving the regular meeting schedule because plaintiffs did not present any evidence in support of their motion for summary disposition to show that the schedule was not posted. Thus, defendants asked that the court deny plaintiffs' motion with regard to that issue under the OMA. In its written opinion and order, the trial court denied plaintiffs' motion on the ground that "there are no facts of record to support this allegation, thus leaving no genuine issue of material fact for trial," and granted summary disposition pursuant to MCR 2.116(I)(2) in favor of defendant.

Plaintiffs argue that the affidavit that Higgs filed was in response to defendants' motion for summary disposition and therefore the affidavit was "filed in the action or submitted by the parties" and therefore the trial court should have considered it in deciding plaintiffs' motion. They rely on *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 377; 775 NW2d 618 (2009), for the proposition that "if a party refers to and relies on an affidavit, pleading, deposition, admission, or other documentary evidence, and that evidence is then filed in the action or submitted by the parties, the trial court must consider it. MCR 2.116(G)(5)."

A motion under MCR 2.116(C)(10) must be supported by documentary evidence. Under MCR 2.116(G)(1)(a)(i), "Unless a different period is set by the court, a written motion under this rule with supporting brief and any affidavits must be filed and served at least 21 days before the time set for the hearing." Higgs' affidavit was not filed with the motion, and was not filed by the date set by the court for filing of dispositive motions. The affidavit was filed with defendants' motion for summary disposition seven days before the hearing and about one month after his own motion was filed. Consequently, the trial court properly denied plaintiffs' motion for summary disposition because there were no facts of record at the time Higgs filed the motion for summary disposition. Defendants concede that the trial court should not have granted summary disposition under MCR 2.116(I)(2) in favor of defendants with regard to this issue by finding the absence of a genuine issue of material fact because defendants did not move for summary disposition of this issue. We agree. Defendants' contend, however, that summary disposition under MCR 2.116(I)(2) was nonetheless appropriate on another basis raised in defendants' response to plaintiffs' motion with regard to all of the allegations of violation of the OMA: the doctrine of unclean hands. This issue, however, was not addressed or decided by the trial court and we decline to address it. Defendants may, however, raise the issue on remand.

## V. INDEMNIFICATION CLAUSE

Plaintiffs next argue that the trial court erred by holding that the Board had authority to include an indemnification clause in the president's employment contract. They concede that the Board can indemnify an employee and pay a judgment, but assert that the Board "does not have any constitutional or statutory authority to enter into an employment contract to indemnify its president before any liability-triggering event has occurred."

The Board's inclusion of a general indemnification clause in Dr. Goodnow's employment contract appears to have been initiated after Higgs filed a formal complaint with the IRS alleging that defendants had been violating the Federal Tax Code because of their failure to report as income to Dr. Goodnow the fair market value of the residence provided by the college to Dr.

Goodnow.[9]  The employment agreement effective July 1, 2008, contained the following indemnification clause:

> 7.  Indemnification.  College agrees to and does hereby indemnify President from any all claims and liabilities arising out of or related to the performance by President in the course and scope of her employment in the duties and responsibilities assigned to her by the College (including any actions required by the contract), including payment of any judgments and costs of defense with respect to litigation, to the maximum extent legally permissible under Michigan law.

Plaintiffs rely on *Michigan Municipal Liability and Property Pool v Muskegon Co Bd of Co Road Comm*, 235 Mich App 183; 597 NW2d 187 (1999), in support of their argument that the college had no authority to include an indemnification clause in the contract. That case involved a county board of road commissioners, which is part of county government acting under a particular set of enabling legislation.  The trial court distinguished the case on the ground that the enabling legislation of counties, cities, villages, and townships is not as broad as the empowering provision under MCL 389.125(f) for community college districts.  Pursuant to MCL 389.125(f), "the district is also empowered to do all other things in its judgment necessary for the proper establishment, maintenance, management, and carrying on of the community college." Plaintiffs seem to suggest that the absence of express authority to specifically include an indemnification clause in an employment agreement renders the clause ultra vires and unenforceable.  Plaintiffs cite no authority in support of this suggestion.  To the contrary, as the trial court noted, the Board is provided a "broad grant of authority pursuant to statute, and thus the indemnification clause in the contract is permitted."  Additionally, the clause specifically states that indemnification is provided "to the maximum extent legally permissible under Michigan law."  Plaintiffs' argument is without merit.

## VI.  RETROACTIVE COMPENSATION

Plaintiffs next contend that the trial court erred by dismissing count II of their complaint without addressing the allegation that a provision in the president's employment contract violated the provisions of Const 1963, Art XI, § 3.

The president's contract expired on June 30, 2008.  The new contract determined Dr. Goodnow's compensation for the period of July 1, 2008 through June 30, 2011.  The contract was ratified on November 11, 2008.  Higgs apparently expressed concern over the constitutionality of providing a salary increase effective as of July 1, 2008.  Thus, the Board approved the employment contract with a retroactive effective date of July 1, 2008, but made the

---

[9] Changes were apparently made to the employment contract to indemnify Dr. Goodnow for the cost to her of any personal income tax liability should the IRS rule that the use of the residence is a taxable fringe benefit.  According to defendants' brief, Higgs complained to the IRS about the failure of the college to issue a Form 1099 to Dr. Goodnow in 2008-2009, but the IRS has never taken action on Higgs' complaint.

salary increase effective December 1, 2008. The employer contribution to the president's 403(b) tax sheltered annuity was increased for 2008 only to compensate the president for the amount of the salary increase that she would have received between July 1 and December 1. Plaintiffs argue that this increased contribution constitutes impermissible retroactive compensation for services already rendered. They rely on *Vigelius v Vairo*, 317 Mich 138; 26 NW2d 737 (1947), in support of their argument. The Court therein stated the policy behind the constitutional provision at issue:

> Restrictive provisions of this class are universally recognized as in the interest of good government and founded on sound reasons of public policy. They are adopted for the two-fold purpose of protecting the public by restraining those in office from taking advantage of their positions and official influence to unduly secure added compensation not contemplated and to which they were not entitled when they were selected for and accepted office, and also to secure each individual officer in enjoyment of the emoluments provided and rightfully to be expected, when he accepted his office, by protecting him from unfriendly power which might, for any reason, otherwise reduce or abolish them.

Defendants refer the Court to OAG 1995, No. 6862, wherein the Attorney General addressed whether a county board of commissioners could modify an approved compensation plan to increase the county sheriff's compensation for prior years of service. The Attorney General stated,

> Once a rate of compensation has been determined for a contractual period, and the public officer subsequently performs services during such period, he or she may not, thereafter, be granted extra compensation for such services on a retroactive basis, regardless of contractual language to the contrary, since any payment of extra compensation or services previously rendered is constitutionally impermissible.

In the present case, the employment agreement determined Dr. Goodnow's compensation for the period of July 1, 2008 to June 30, 2009. She performed services during that period and was not granted extra compensation on a retroactive basis. The specific benefits that plaintiffs claim constitute retroactive compensation – the deferred contributions to the president's tax-sheltered annuity – are for the specific period of December 1, 2008 through June 30, 2009. The same paragraph expressly states that "Such contributions shall be considered part of the President's compensation for services performed *under this Agreement*." The contract was ratified before the deferred contributions would begin. The contributions were expressly prospective, to be made in the future for continued service under the agreement that established them. Although the trial court granted summary disposition of Count II in its entirety without specifically addressing plaintiff's argument regarding the increased contributions to the tax sheltered annuity, summary disposition was nonetheless appropriate.

## VII. COSTS UNDER MCL 600.2411(1)

Plaintiffs also argue that the trial court erred by awarding defendant costs under MCL 600.2411(1). This Court reviews a trial court's award of attorney fees and costs for an abuse of

discretion. *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008). Questions of statutory interpretation are questions of law that this Court reviews de novo. *In re MCI Telecom Complaint*, 460 Mich 396, 413; 596 NW2d 164 (1999).

After judgment in this case, the trial court granted defendants' motion for taxation of costs and, as requested by defendants, 1-1/2 times the costs pursuant to MCL 600.2411, which provides:

> In the following actions, if the defendant prevails, he shall be awarded costs and in addition, ½ thereof:
>
> (1) In actions against public officers appointed or elected under the laws of this state, or against any person specifically appointed according to law to execute the duties of such public officer, for or concerning the omission to do any act which it was his official duty to perform.

Without citation to any authority and with cursory argument, plaintiffs assert that this statutory provision is inapplicable to claims of violations of the OMA or illegal expenditure of public funds by the individual board members because these allegations do not concern the omission to do any act which it was his or her official duty to perform.

Plaintiffs specifically alleged that MacKenzie, Lane, and Lawrence-Webster, all duly elected members of the Board, had a duty imposed by the OMA to hold an open, public meeting whenever two or more of them were communicating. Plaintiffs alleged that they omitted to perform this official duty, which was imposed by the provisions of the OMA upon them as members of a public body. Considering the plain words of the statute, this case falls within the scope of MCL 600.2411(1). These defendants are public officers elected as Delta College Trustees. Plaintiffs alleged that they failed (omitted) to do an act that was theirs to perform [hold an open, public meeting when they communicated regarding Board (committee) business]. The trial court properly awarded the multiplier when calculating costs.

## VIII. DISQUALIFICATION OF HIGGS AS COUNSEL FOR PLAINTIFFS

Lastly, plaintiffs argue that the trial court erred by disqualifying Higgs as attorney for plaintiffs. The trial court's factual findings regarding a motion to disqualify counsel are reviewed for clear error. *Buchanon v Flint City Council*, 231 Mich App 536, 547; 586 NW2d 573 (1998).

The trial court disqualified Higgs as counsel for the plaintiffs when Higgs was added as a party plaintiff because Higgs would be a likely witness and therefore disqualified from representing the other plaintiffs. See MRPC 3.7(a). Plaintiffs did not seek reconsideration of this ruling or file an interlocutory appeal with regard to this ruling.

Plaintiffs subsequently moved for a substitution of attorneys based on an alleged change of circumstances. They asserted that Higgs was one of the taxpayer plaintiffs whose claims had been disposed of by defendants' motion for summary disposition, thus removing the obstacles for his representation of the remaining plaintiffs. They further asserted that Higgs had resigned from the Board. Plaintiffs maintained that a new evidentiary hearing was necessitated on the

-12-

matter before the court ruled on the motion. The court denied the motion for substitution of attorneys "for the reasons stated on the record of August 30, 2012." A review of the transcript from that hearing reveals much confusion regarding Higgs' argument as to why he was no longer a plaintiff and why he should be permitted to be substituted as counsel for purposes of the trial on the one remaining alleged OMA violation. Nonetheless, the transcript of the hearing concludes with: "At 2:00 p.m. balance of 8/30/12 motion hearing not transcribed because Mr. Higgs indicates he is no longer interested in pursuing an appeal of this matter." Thus, the reasons for the trial court's ruling are not provided in the transcript. Nonetheless, Higgs' argument is not preserved in light of his concession at the hearing that he would not be appealing the decision, and we decline to address it.[10]

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. Jurisdiction is not retained.

/s/ E. Thomas Fitzgerald
/s/ Elizabeth L. Gleicher
/s/ Amy Ronayne Krause

---

[10] We note that defendants assert that Higgs conducted the two-day trial on the OMA violation. However, the record is silent with regard to who conducted the trial and we are not able to confirm defendant's assertion.