*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ROBIN SPALDING and JOHN PATEREK,

　　　　Plaintiffs-Appellants,

v

MARY K. SWIACKI, CAMILLE FINLAY, JIM
GOETZINGER, and STEVE NIKKEL,

　　　　Defendants-Appellees.

FOR PUBLICATION
July 8, 2021
9:05 a.m.

No. 354598
Macomb Circuit Court
LC No. 2020-000980-CZ

Before: K. F. KELLY, P.J., and SHAPIRO and SWARTZLE, JJ.

SWARTZLE, J.

With its enactment in 1976 of the Open Meetings Act (OMA), MCL 15.261 *et seq.*, our Legislature required that meetings of public bodies occur in the open. The accountability that comes with openness would be thwarted, however, if the public was not timely made aware of a meeting or if there was no penalty for violating the act. When the public is not sufficiently notified of a meeting, our Legislature has provided for several types of relief—invalidation of policies approved during that meeting, injunctive relief against future violations, and civil and criminal penalties against public officials. Different standards apply to different types of relief, as our case law has long recognized.

This case arises from defendants' decision to proceed with a meeting of the Armada Township Board of Trustees despite the board's failure to post timely notice of the meeting on the township's website. Although the board substantially complied with the notice requirements by, among other things, physically posting notice in the township's office and posting the notice to the website several hours before the meeting, there is no question that it did not strictly comply with the OMA's notice provisions. When a person brings a claim for statutory damages, that claim is not defeated by a showing of substantial compliance. As we explain, the trial court erred in this respect and we reverse.

## I. BACKGROUND

Plaintiff John Paterek is the township supervisor, and plaintiff Robin Spalding is Paterek's deputy. Defendant Mary K. Swiacki is the township clerk, defendant Camille Finlay is the

-1-

township treasurer, and defendants Jim Goetzinger and Steve Nikkel are township trustees. In December 2019, the township board decided to schedule several budget workshops throughout 2020. The workshops were not "meetings" under the OMA, and no votes were planned to be taken during them. On December 18, the township posted its annual-meeting schedule on its website; the schedule included a budget workshop set for January 21, 2020, at 7 p.m. In early January 2020, the board added agenda items to the workshop, including items for which votes would be taken, and therefore the January 21 budget workshop became a "special meeting" that fell within the scope of the OMA.

Among other requirements, the OMA requires that public notice of a special meeting must be physically posted at least 18 hours before the meeting and, if the body maintains an official website, then public notice must similarly be made on that website 18 hours before the meeting. MCL 15.265(4). It is undisputed that a physical copy of the meeting agenda was posted outside the township's office on January 16, but notice was not posted on the township's website until 11:50 a.m. on January 21.

Several hours before the meeting, Paterek emailed the other board members stating that the January 21 meeting should be rescheduled because the board had not posted timely public notice on the website. Swiacki consulted a staff member of the Michigan Townships Association; according to Swiacki, the staff member advised that the board could proceed with the January 21 meeting. When the board convened later that day, Paterek again voiced his concern about the untimely notice. He informed the other board members that he would not participate in the meeting, and he moved to a seat in the audience along with other members of the public. The remaining board members proceeded with the meeting during which they deliberated and took votes on several matters.

Plaintiffs subsequently sued defendants, alleging that defendants violated the public-notice requirements of the OMA. Plaintiffs did not seek to invalidate any decision made during the January 18 meeting or enjoin future noncompliance, but rather sought statutory damages, costs, and attorney fees against defendants under MCL 15.273(1). Defendants moved for summary disposition under MCR 2.116(C)(10), arguing that they had substantially complied with the OMA's notice requirements. For their part, plaintiffs also moved for summary disposition under MCR 2.116(I)(2).

The trial court concluded that defendants had violated the OMA by failing to provide timely notice on the website, but the violation was merely a "technical" one. The trial court held that defendants had substantially complied with the OMA's notice requirements, and therefore granted summary disposition in defendants' favor.

This appeal followed.

## II. ANALYSIS

The question on appeal is a narrow, legal one—Is a public body's substantial compliance with the OMA's public-notice requirements in MCL 15.265 sufficient to defeat a claim for statutory relief under MCL 15.273? As we explain, it is not.

## A.  STANDARD OF REVIEW

"A trial court's grant or denial of summary dismissal is reviewed de novo by this Court." *Lantz v Southfield City Clerk*, 245 Mich App 621, 625; 628 NW2d 583 (2001).  Similarly, we review de novo questions of statutory interpretation.  *Adair v Michigan*, 486 Mich 468, 477; 785 NW2d 119 (2010).  When reviewing a statute, "we are required to give effect to the Legislature's intent." *Bartalsky v Osborn*, __ Mich App __, __; __ NW2d __ (2021), slip op at 3 (cleaned up). "The Legislature is presumed to intend the meaning clearly expressed, and this Court must give effect to the plain, ordinary, or generally accepted meaning of the Legislature's terms." *D'Agostini Land Co LLC v Dep't of Treasury*, 322 Mich App 545, 554; 912 NW2d 593 (2018) (citation omitted).

## B.  PUBLIC NOTICE AND CIVIL LIABILITY UNDER THE OMA

The parties do not dispute that the January 21 special meeting was a covered "meeting" of a "public body" involving deliberations about public policy.  MCL 15.262(a),(b).  Thus, the meeting was subject to the provisions of the OMA, including those requiring public notice.  MCL 15.265.  With respect to notice, the OMA provides in relevant part:

> (1) A meeting of a public body shall not be held unless public notice is given as provided in this section by a person designated by the public body.

> *  *  *

> (4) Except as provided in this subsection or in subsection (6), for a rescheduled regular or a special meeting of a public body, a public notice stating the date, time, and place of the meeting shall be posted *at least 18 hours before the meeting* in a prominent and conspicuous place at both the public body's principal office *and, if the public body directly or indirectly maintains an official internet presence that includes monthly or more frequent updates of public meeting agendas or minutes, on a portion of the website that is fully accessible to the public. . . .* [MCL 15.265 (emphasis added).]

The OMA sets forth several different remedies for violations of its provisions, including civil liability for public officials.  With respect to plaintiffs' claims here, "[a] public official who intentionally violates this act shall be personally liable in a civil action for actual and exemplary damages of not more than $500.00 total, plus court costs and actual attorney fees."  MCL 15.273(1).  Although a person can join an action for statutory damages, costs, and fees with an action for injunctive or exemplary relief, MCL 15.273(3), plaintiffs in this case chose to pursue only the former statutory relief.

## C.  *ARNOLD TRANSIT*, *NICHOLAS*, AND *LEEMREIS*

The record is clear that defendants did not post the proper public notice on the township's website at least 18 hours before the January 21 special meeting.  Although defendants point out that its 2020 workshop schedule had been posted weeks before the January 21 special meeting, that schedule did not notify the public that the board would be holding a meeting on January 21 during which votes would be taken.  With that said, the record is equally clear that proper notice

was physically posted in the township's office; notice via the township's website of the workshop at least alerted the public that budget matters would be discussed on January 21; notice of the meeting was posted on the website approximately seven hours before the meeting started; and members of the public were in attendance at the meeting. Based on our review of the record, we agree with the trial court that there is no genuine issue of material fact that the board failed to comply strictly with the OMA's public-notice provision, but that it did comply substantially with the provision.

Defendants argue that this conclusion is fatal to plaintiffs' claim for statutory damages, court costs, and attorney fees, pointing to this Court's holdings in *Arnold Transit Co v City of Mackinac Island*, 99 Mich App 266; 297 NW2d 904 (1980),[1] and *Nicholas v Meridian Charter Twp Bd*, 239 Mich App 525; 609 NW2d 574 (2000), abrogated on other grounds by *Speicher v Columbia Twp Bd of Trustees*, 497 Mich 125; 860 NW2d 51 (2014). In arguing this, however, defendants fail to distinguish between the various types of relief available under the OMA.

As explained by this Court in *Leemreis v Sherman Twp*, 273 Mich App 691, 700; 731 NW2d 787 (2007), there are "three distinct types of relief" under the OMA (excluding a criminal action). First, a person can seek to invalidate a decision of the public body made in violation of the OMA. MCL 15.270(2). Second, a person can seek an injunction against a public body to compel compliance or enjoin further noncompliance with the OMA. MCL 15.271(1). And third, a person can seek statutory damages, court costs, and attorney fees against a public official for an intentional violation of the OMA, as noted earlier. MCL 15.273(1); see also *Speicher*, 497 Mich at 135-136; *Citizens for a Better Algonac Co Schs v Algona Co Schs*, 317 Mich App 171, 181; 894 NW2d 645 (2016). As this Court observed in *Leemreis*, "None of these sections refers to either of the other sections. Reading the OMA as a whole, it appears that these sections, and the distinct kinds of relief that they provide, stand alone." *Leemreis*, 273 Mich App at 701. Our Supreme Court later reinforced this point in *Speicher*, quoting *Leemreis* and adding, "When a statute, like the OMA, gives new rights and prescribes new remedies, such remedies must be strictly pursued; and a party seeking a remedy under the act is confined to the remedy conferred thereby and to that only." *Speicher*, 497 Mich at 136. Thus, it is critical to keep in mind the specific type of relief sought under the OMA when considering whether a person has met the applicable standard for that relief.

In *Arnold Transit*, for instance, the plaintiffs sought invalidation of the defendant city's ferry-boats code. The plaintiffs argued that, when adopting the code, the city violated the OMA's public-notice provisions and, in accordance with MCL 15.270(2), the code should be invalidated. *Arnold Transit*, 99 Mich App at 268. This Court agreed with the plaintiffs that the city violated the "technical requirements" of the OMA by, among other things, failing to post public notice at

---

[1] *Arnold Transit* was released in 1980 and, although we are not required to follow the rule of law established in a published opinion of this Court issued before November 1, 1990, MCR 7.215(J)(1), we are bound by our Supreme Court's opinion affirming the decision, *Arnold Transit Co v City of Mackinac Island*, 415 Mich 362, 363; 329 NW2d 712 (1982) ("After full consideration of the record, briefs, and argument of the parties, we are not persuaded of any error in the disposition of this matter by the Court of Appeals, 99 Mich App 266, 297 NW2d 904.").

least 18 hours before the meeting. *Id.* at 274. The Court went on to conclude, however, that there was not "any desire by defendant to conduct its meeting out of public sight or that it in fact did so." *Id.* Because the OMA was a then-relatively new act, the Court looked to the Texas Court of Appeals for guidance on public notice:

> Even though provisions of the statute are mandatory, we hold that the "notice" provisions of the statute are subject to the substantial compliance rule. The rationale of the substantial compliance rule is that while the notice provisions in statutes are mandatory, they are essentially procedural; that rigid adherence to such a procedural mandate will not be required if it is clear that a substantial compliance provides realistic fulfillment of the purpose for which the mandate was incorporated in the statute. [*Id.* at 275, quoting *Stelzer v Huddleston*, 526 SW2d 710, 713 (Tex Civ App, 1975).]

The Court held that the city had substantially complied with the OMA's public-notice provisions and, because of this, the trial court did not err by refusing to invalidate the code. *Id.* at 275-276.

Our Court had occasion to consider a similar dispute involving public notice in *Nicholas*. In that case, the plaintiffs sought to invalidate several decisions made by the township board during a meeting that had not been adequately noticed. *Nicholas*, 239 Mich App at 527. The plaintiffs also sought injunctive relief. After reviewing the record, this Court agreed with the trial court that defendants had violated the OMA. *Id.* at 532. Citing *Arnold Transit*, the Court further concluded that there was substantial compliance with the public-notice provisions and the rights of the public were not impaired. *Id.* at 532-533. Given this, the Court affirmed the trial court's judgment denying invalidation of the township board's decisions or any injunctive relief. *Id.* at 533-534.

Importantly for the present case, however, neither *Arnold Transit* nor *Nicholas* involved a claim for statutory damages under MCL 15.273(1). Because our case law requires that we focus on the distinct claim being made when determining the appropriate standard to apply, we turn to the text of MCL 15.273(1) itself and the context of the OMA as a whole.

## D. TEXT AND CONTEXT

The Legislature explained in the preamble that it enacted the OMA to ensure that meetings of public bodies would be open to the public. 1976 PA 267. To ensure this openness, the Legislature provided for, among other things, public notice in advance of meetings and various separate types of relief for violations of the OMA, including invalidation of decisions, injunctions, and damages. *Id.*; MCL 15.265; MCL 15.270; MCL 15.271; MCL 15.273.

With regard to enforcement, the Legislature set forth different standards for the different forms of relief. For example, to invalidate a public body's decision, a plaintiff must show that the public body violated either: (a) the provisions of MCL 15.263(1), (2), or (3) that require that a meeting be "open" to the public; or (b) the public-notice provisions of MCL 15.265, but only if the deficient notice actually interfered with the public body's "substantial compliance" with respect to the openness requirements of MCL 15.263(1), (2), or (3). MCL 15.270(2). Additionally, a plaintiff must further show "that the noncompliance or failure has impaired the rights of the public" under the OMA. *Id.* The explicit "substantial compliance" measure for public-notice

-5-

violations, coupled with the need to show that the rights of the public were actually impaired, set a high bar for invalidating a public body's decision based solely on a defect in notice. This high bar makes sense, as invalidation of a public body's decision would impact everyone who is subject to that decision, not just the parties to the lawsuit, and thus invalidation should not occur unless the rights of the public were actually impaired.

The OMA's civil-liability provision also sets a high bar, but in a different way. In contrast to the decision-invalidation provision, which explicitly references "substantial compliance," MCL 15.270(2), the civil-liability provision makes no reference to "substantial compliance" and instead imposes liability on a public official for violating the OMA, but only if the violation is intentional, MCL 15.273(1). Thus, rather than focus on the impact of the violation, the civil-liability provision focuses on the state of mind of the public official. This has the practical effect of imposing civil liability on those public officials who intentionally flout the OMA, but excusing from civil liability those public officials who act in good faith but inadvertently or mistakenly violate the act. On this reading, it does not matter whether compliance was substantial or not, whether the violation was a material or technical one—rather, the focus is on the public official's state of mind.

In addition to the plain language of the civil-liability provision itself, this reading finds further contextual support in the OMA. As already pointed out, the decision-invalidation provision explicitly sets a "substantial compliance" measure with respect to a public-notice violation. MCL 15.270(2). Nowhere else in the OMA does the Legislature require a plaintiff to show that a violation "interfered with substantial compliance" of the act. Where the Legislature expressly sets a particular standard in one section of a statute but not in another, we presume that the Legislature intended for different standards to apply to the different sections—i.e., the Legislature's word choice was intentional. See *Bianchi v Auto Club of Mich*, 437 Mich 65, 72; 467 NW2d 17 (1991) (applying the legal maxim, "expressio unius est exclusio alterius").

In this respect, our reading of the OMA is similar to our Supreme Court's reading of the election code in *Stand Up for Democracy v Secretary of State*, 492 Mich 588; 822 NW2d 159 (2012). In that case, the Court considered whether a referendum petition complied with the requirement of the election code that " 'the heading of each part of the petition *shall be* prepared in the following form and printed in capital letters in *14-point boldfaced type*.' " *Id*. at 601 (quoting MCL 168.482(2) (note: the statute has since been amended to replace "shall" with "must," 2018 PA 608)). The referendum at issue was submitted in typeface that was smaller than 14-point. *Id*. at 596-597. The Court rejected the plaintiff's argument that substantial compliance with the typeface requirement was sufficient. The Court observed "that the Legislature knows how to construct language specifically permitting substantial compliance with regard to form and content requirements" of a referendum, *id*. at 601; the Court, in fact, pointed to an instance where the Legislature did precisely that, *id*. at 603. In the Court's view, the Legislature's use of the term "shall" indicated "a mandatory and imperative directive" that required strict, not substantial, compliance with the typeface provision. *Id.* at 601 (cleaned up).

## III. CONCLUSION

Our case law stresses the importance of focusing on the particular type of relief sought for violation of the OMA. *Arnold Transit* and *Nicholas* held that a public body's decision will not be invalidated or injunctive relief imposed for a public-notice violation as long as the public body

substantially complied with the OMA. And yet, neither *Arnold Transit* nor *Nicholas* involved a claim for statutory damages against a public official. Our review of the text and context of the civil-liability provision of MCL 15.273 confirms that the substantial-compliance standard does not apply to a claim for statutory damages, court costs, and attorney fees under the OMA.

The trial court erred in granting summary disposition to defendants on this ground. Because the trial court did not reach the question of whether defendants intentionally violated the OMA, we decline to reach the question for the first time on appeal.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.


/s/ Brock A. Swartzle
/s/ Kirsten Frank Kelly
/s/ Douglas B. Shapiro